**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Everett Frazier, Commissioner of the**
**West Virginia Division of Motor Vehicles,**
**Petitioner**

**vs)  No. 20-0482** (Raleigh County 19-AA-11-P)

**Nicholas Deems,**
**Respondent**

## MEMORANDUM DECISION

Police arrested Respondent Nicholas Deems for driving under the influence in November 2017 after he crashed his car and admitted to drinking before driving.  The West Virginia Division of Motor Vehicles (DMV) later revoked his driver's license for refusing to submit to a secondary chemical test of his blood-alcohol content.  Under West Virginia Code § 17C-5-7(a) (2013), police officers must warn drivers about the consequences of a refusal at least fifteen minutes before the refusal is "finally designated."  In this case, the Office of Administrative Hearings (OAH) found that the arresting officer waited enough time after providing the warnings to Mr. Deems before finally designating his refusal.  So, the OAH affirmed the DMV's revocation.  But the circuit court found that the officer did not wait fifteen minutes after the warnings before deeming it final and reversed OAH's revocation for the refusal.

On appeal to this Court, the DMV argues that the circuit court abused its discretion by erroneously replacing OAH's factual findings.  We agree.  Because this case presents no substantial question of law or fact, we find a memorandum decision appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.[1]

## I.  Factual and Procedural History

Corporal Billy J. Adkins of the Raleigh County Sheriff's Department (the Investigator) responded to a car crash on November 19, 2017, where he found Mr. Deems standing outside his crashed vehicle.  The Investigator smelled alcohol on Mr. Deems's breath and noticed that he struggled to balance.  Mr. Deems also admitted to consuming alcohol before driving, but he refused a preliminary breath test and all field sobriety tests.  Based on the Investigator's observations, he arrested Mr. Deems and transported him to the Raleigh County Sheriff's Department for processing and administrating the secondary chemical test.

---

[1]  On appeal, Assistant Attorney General, Janet E. James, represents the DMV, and David R. Pence represents Mr. Deems.

At the department, Mr. Deems signed a form titled "West Virginia Implied Consent Statement" (Implied Consent) at 1:53 a.m. after the Investigator read it to him. The form contained the following statements:

> PURSUANT TO STATE LAW [CHAPTER 17C, ARTICLE 5, SECTION 7] I AM NOW DIRECTING YOU TO TAKE AN APPROVED SECONDARY TEST OF YOUR BREATH . . . .
>
> IF YOU REFUSE TO SUBMIT TO THIS TEST, YOUR PRIVILEGE TO OPERATE A MOTOR VEHICLE IN THIS STATE WILL BE REVOKED . . . .
>
> IF YOU REFUSE YOU WILL HAVE FIFTEEN MINUTES IN WHICH TO CHANGE YOUR MIND AFTER WHICH TIME YOUR REFUSAL WILL BE DEEMED FINAL . . . .[2]

After Mr. Deems signed the form, the Investigator observed him for twenty minutes to make sure he did not ingest anything before the secondary breath test. The Investigator then attempted to administer the test, but Mr. Deems failed to provide a sufficient sample because he refused to blow hard enough, even after several attempts. So, the Investigator pushed a button on the machine that recorded Mr. Deems's refusal at 2:23 a.m., at least thirty minutes after the Investigator read him the Implied Consent warnings. Mr. Deems responded belligerently when the Investigator recorded the refusal, and officers transported him to Southern Regional Jail less than ten minutes later.

The West Virginia Division of Motor Vehicles (DMV) entered two orders on December 4, 2017—one revoking Mr. Deems's driver's license for driving under the influence and the other revoking it for refusing the secondary breath test. Mr. Deems appealed the revocations to the OAH. It affirmed both revocations, finding that Mr. Deems drove drunk and that the thirty minutes between Mr. Deems signing the Implied Consent and the Investigator entering the refusal on the breathalyzer exceeded the fifteen-minute statutory period for finally designating a refusal. Mr. Deems appealed to the Circuit Court of Raleigh County only OAH's revocation related to the refusal.

The circuit court reversed OAH's revocation, finding that "there is no evidence in the record that would show that the [Investigator] waited the required 15-minutes before he elected to remove [Mr. Deems] from the law enforcement agency's office and transport him to jail." The circuit court reasoned that OAH factually erred by finding Mr. Deems received the warnings and signed the Implied Consent at 1:53 a.m. But in his response to this appeal, Mr. Deems does not contest that the Investigator read him the warnings or that he signed the Implied Consent at 1:53 a.m. Instead, he argues that § 17C-5-7(a) required the officers to wait fifteen minutes after his 2:23 a.m. refusal before deeming it final.

---

2 (Brackets in original).

## II. Standard of Review

We have plainly established that

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.[3]

And,

> [i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*"[4]

Likewise, "findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal."[5]

## III. Analysis

The decisive statute in this case, West Virginia Code § 17C-5-7(a) (2013), provides:

> (a) If any person under arrest . . . refuses to submit to any secondary chemical test, the test shall not be given: *Provided,* That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life; and that after fifteen minutes following the *warnings* the refusal is considered final. The arresting officer after that period of time expires has no further duty to provide the person with an opportunity to take the secondary test . . . .[6]

---

[3] Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

[4] Syl. Pt. 2, *id.*

[5] *Frazier v. S.P.*, 242 W. Va. 657, 662-63, 838 S.E.2d 741, 746-47 (2020) (quoting *Modi v. West Virginia Bd. of Med.*, 195 W. Va. 230, 239, 465 S.E.2d 230, 239 (1995)).

[6] (emphasis added). In 2020, the Legislature amended this statute and deemed refusals final "after 15 minutes have passed since the refusal[.]" West Virginia Code § 17C-5-7(b) (2020). But the 2013 version applies in this case since the arrest occurred in 2017.

In this instance, the circuit court based its reversal on the following factual findings:

> [T]here is no dispute that [Mr. Deems] did, in fact, refuse to provide a sufficient sample on the first secondary chemical testing as evidenced in the record.
>
> The record shows [Mr. Deems] was offered a breath test at 2:23 a.m., a refusal was entered, and [Mr. Deems] was offered a blood test at 2:24 a.m. The officer's live testimony at the administrative hearing indicates [Mr. Deems] was transferred within 10-minutes or less after signing the Implied Consent directly contradicting the officer's written report . . . .

For its determination as to when Mr. Deems signed the Implied Consent, the circuit court relied on the following OAH hearing exchange between Mr. Deems's counsel and the Investigator:

> Q. . . . . On Cross . . . you indicated you pushed refusal, he became belligerent and was taken away. How long transpired from the time he refused until he was removed . . . ?
>
> . . . .
>
> A. It was fairly quickly. I would say ten minutes or under . . . .

But contrary to the circuit court's finding, the Investigator stated that police removed Mr. Deems from the Sheriff's Department less than ten minutes after he refused, not ten minutes after the Investigator gave the warnings in the Implied Consent. And the 1:53 a.m. time stamp on the Implied Consent and the breathalyzer's 2:23 a.m. record support OAH's finding that the Investigator provided the warnings more than fifteen minutes before finally designating Mr. Deems's refusal. Since substantial evidence supported OAH's finding, the circuit court owed deference to it; "'[s]ubstantial evidence' requires more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If an administrative agency's factual finding is supported by substantial evidence, it is conclusive."[7] So, the circuit court abused its discretion by erroneously disturbing OAH's factual finding, and we defer to OAH's finding that the Investigator finally designated the refusal more than fifteen minutes after the warnings.

Though the circuit court did not base its reversal on it, Mr. Deems argues that "the fifteen (15) minute time period begins when the driver is first offered the secondary breath test." For his argument, Mr. Deems relies on the misstatement in the Implied Consent that said he would have fifteen minutes to "change [his] mind" and on the 2020 amendments that gave drivers fifteen minutes after a refusal before officers could finally designate it. But the statute in effect at the time of Mr. Deems's arrest unambiguously states that "after fifteen minutes following *the*

---

[7] Syl. Pt. 4, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

*warnings* the refusal is considered final" and that officers have "no further duty to provide the person with an opportunity to take the secondary test" after that. So, contrary to Mr. Deems's argument, the 2013 version of the statute starts the fifteen minutes when the driver receives the warnings, not when officers first offer the test.[8]

## IV. Conclusion

For the reasons stated above, we reverse the circuit court's June 2, 2020, Order and remand for the circuit court to reinstate the DMV's revocation for Mr. Deems's refusal to submit to the secondary chemical test.

Reversed and Remanded.

**ISSUED:** April 8, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton disqualified.
Justice Alan D. Moats, sitting by temporary assignment, not participating.
Judge Derek C. Swope, sitting by temporary assignment.

---

[8] Mr. Deems does not argue that he relied on the form's misstatement in his decision to refuse the test or that the misstatement invalidated the warnings; he only argues that it proves the Legislature's intent to give drivers fifteen minutes after their refusal before officers can finally designate it. But accepting Mr. Deems's argument would contradict the statute's plain language and render the 2020 amendment meaningless.